UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STATE FARM FIRE & CASUALTY COMPANY, as subrogee of William Arnold, et al. | ) ) ) ) | |
| Plaintiff, | ) ) | No. 11 CV 06077 |
| v. | ) ) | Judge Edmond E. Chang |
| PENTAIR, INC. | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff State Farm brought a property subrogation case to recover monetary damages for reimbursements it made to its insureds for real and property damage caused by the allegedly-defective design of sump pumps manufactured and distributed by Defendant Pentair.[1] R. 6 at 2. Pentair believes the claims are subject to arbitration, and has moved to compel arbitration and dismiss the complaint. R. 15. For the reasons explained below, the Court grants the motion to compel arbitration and will stay the case.

**I.**

The following facts are drawn from the complaint. State Farm is an Illinois corporation and is engaged in the business of issuing insurance policies throughout the

---

[1] Citation to the docket is "R." followed by the docket entry. This Court has subject matter jurisdiction under 28 U.S.C. § 1332. Although each of the subrogation claims State Farm brings against Pentair involves less than $75,000, for jurisdictional minimum purposes, a single plaintiff may aggregate multiple claims against a single defendant, even if the claims are unrelated. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 539 (7th Cir. 2006); *see Exxon Mobile Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 585 (2005) (Ginsburg, J., dissenting); *cf.* Fed. R. Civ. P. 18(a) (joinder proper).

United States. R. 6 at 3. State Farm alleges that Pentair engaged in the design, manufacture, distribution, and marketing of defective sump pumps. *Id.* at 2-3. According to State Farm, between July 2007 and August 2011, water loss occurred in the homes of 108 of State Farm's insureds due to the failure of Pentair pumps, which allowed water to accumulate in the homes. *Id.* at 4-5. Pursuant to the insurance policies, State Farm paid over $900,000 in real and personal property damages to its insureds, and is now subrogated to all "rights, claims and causes of action that State Farms' insureds may have against Pentair." *Id.* at 4.

State Farm and Pentair are signatories to an arbitration agreement implemented by an alternative dispute resolution service called Arbitration Forums, Inc. The Property Subrogation Arbitration Agreement requires mandatory arbitration for personal or commercial property subrogation when the "Company Claim" amount is less than or equal to $100,000. R.17-1 at 4; R. 17-2 at 1. The Arbitration Agreement states, in relevant part, "Signatory companies must forego[2] litigation and arbitrate any personal or commercial property subrogation or self-insured property claims through Arbitration Forums, Inc." R. 17-1. As of February 1, 2010, the Arbitration Forums, Inc. rules regarding compulsory arbitration were amended to state, "[c]ompulsory arbitration is applicable to a maximum of $100,000 Company Claim Amount in the Automobile, Medical Payment, Property, and Uninsured Motorists Forums." R. 17-2

---

[2]Given the context, the drafters of the arbitration agreement should have used "forgo" instead of "forego."

2

at 1. But nowhere in the arbitration agreement or in the amended rules is there an express definition of "Company Claim."

Pentair argues that each of State Farm's 108 subrogated claims falls within the scope of the Arbitration Agreement because each individual claim is worth less than $100,000, and thus, Pentair argues, State Farm must arbitrate each claim. R 17 at 6. State Farm responds that the claim falls outside the scope of the Arbitration Agreement because when the claims are aggregated, they exceed the $100,000 compulsory arbitration limit. R. 19 at 1, 4-5.

## II.

Under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.,* if the parties have entered into an arbitration agreement and the asserted claims are within its scope, a motion to compel arbitration must be granted. 9 U.S.C. §§ 3-4; *Sharif v. Wellness Int'l Network Ltd.,* 376 F.3d 720, 726 (7th Cir.2004) (citing *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.,* 174 F.3d 907, 909 (7th Cir.1999)). Section 3 of the FAA specifically requires granting a motion to stay a lawsuit where "the issue involved in such suit . . . is referable to arbitration" under a written agreement. 9 U.S.C. § 3. And Section 4 requires that the court order the parties to proceed in arbitration if there is an agreement to arbitrate. 9 U.S.C. § 4.

Here, State Farm does not dispute that the parties are bound by an *enforceable* contract; State Farm and Pentair are in fact signatories to the Arbitration Agreement, and there is no dispute as to the agreement's validity. Nor does State Farm dispute the application of the contract to the particular *type* of controversy; State Farm admits that

the Arbitration Agreement applies to subrogation claims. Instead, the dispute arises over whether individual underlying claims—each payment to each insured—may be aggregated so as to exceed the $100,000 threshold and relieve State Farm of the obligation to arbitrate. This in turn depends on how the undefined term "Company Claim" is interpreted. R. 19 at 4-6; R. 20 at 6-8.

Pentair argues that the interpretation of "Company Claim" in the arbitration contract is a procedural question that must be decided by the arbitrator, R. 25 at 2, while State Farm argues that this is a substantive question that would therefore be a question of arbitrability for this Court to decide, R. 24 at 2. As a general matter, the question of whether the parties agreed to arbitrate a matter must be decided by the court, because a party can only be compelled to arbitrate those issues it has agreed to submit to arbitration. *See AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648-49 (1986). But the category of issues that are "question[s] of arbitrability" for the court to decide is not as broad as it sounds:

> Linguistically speaking, one might call any potentially dispositive gateway question a "question of arbitrability," for its answer will determine whether the underlying controversy will proceed to arbitration on the merits. The Court's case law, however, makes clear that, for purposes of applying the interpretive rule, the phrase "question of arbitrability" has a far more limited scope.

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Put generally, the limited scope of what constitutes a "question of arbitrability" for the court to decide is confined to

> the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and,

4

consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

*Id.* at 83-84. And put more specifically, *Howsam* described the narrow questions of arbitrability that are reserved for the court to decide: (1) "a gateway dispute about whether the parties are bound by a given arbitration clause," and (2) "a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Id.*

Here, the parties do not dispute that they are *bound* by the contract (the first category described above), nor do they dispute that subrogation claims arising from property damage are not the *type* of controversy covered by the arbitration agreement (the second category described above). Instead, the parties argue over whether a "Company Claim," for purposes of setting the dollar-amount at stake, comprises one claim relating to one insured or instead may comprise all of the subrogee's consolidated claims. That dispute does not fall within *Howsam's* "question of arbitrability" definition, and instead more closely resembles a procedural question that an arbitrator would be better-positioned to interpret.

The cases cited by State Farm address questions of "whether a particular dispute concerns a *subject* that the parties have agreed to arbitrate," *Niro v. Fearn Int'l Inc.*, 827 F.2d 173, 175 (7th Cir. 1987) (emphasis added), such as whether the parties agreed to arbitrate issues of laches, *Int'l Union of Operating Eng'rs, Local 150 v. Flair Builders, Inc.*, 406 U.S. 487, 491 (1972), or grievances concerning labor-management layoffs, *AT&T Techs.*, 475 U.S. at 651, but this case does not involve a question of

5

subject matter.[3] Instead, this case involves a question that is similar to determining what the procedural requirements are, and those questions are normally reserved for the arbitrator. *Niro*, 827 F.2d at 175; *see, e.g., Howsam*, 537 U.S. at 85 (holding that the NASD time limit rule was a matter for the arbitrator to decide, not a question of arbitrability); *Green Tree Fin. Corp v. Bazzle*, 539 U.S. 444, 451-52 (2003) (holding that the question of whether the agreement forbids class arbitration does not fall within one of the *Howsam* limited circumstances where the court may preside, but is for the arbitrator to decide).

Although there is no case precisely on point, *Employers Ins. Co. of Wausau v. Century Indem. Co.*, 443 F.3d 573 (7th Cir. 2006), comes closest to our case. In *Wausau*, two insurance companies disputed whether their reinsurance arbitration agreements precluded consolidated arbitration. *Id.* at 574-76. Although one insurance company argued that the issue was a "question of arbitrability" for the court and "urged the [] court to find it was entitled to two separate arbitrations," *id.* at 574, the other insurer argued that the issue was procedural and for the arbitrator to resolve, *id.* at 576. The Seventh Circuit concluded that "the question of whether an arbitration agreement forbids consolidated arbitration is a procedural one," and was therefore for the arbitrator to resolve, because the issue neither involved whether the parties were bound by the arbitration clause, nor whether the clause covered specific insurance policies. *Id.* at 577.

---

[3]One example of a subject-matter question would be if the parties disagree about the type of subrogation claims the parties agreed to arbitrate.

Similar to the dispute addressed by *Wausau*, the question of whether "Company Claim" comprises only one claim, or instead may comprise multiple aggregated claims, concerns neither whether the parties are bound by the arbitration agreement nor whether the agreement covers subrogation disputes over property damage. Rather, the question is whether Arbitration Forums' agreement permits a party to aggregate multiple claims into one "Company Claim." "This comes down to a matter of contract interpretation, which the arbitrator is well qualified to address." *Wasau*, 443 F.3d at 578.

To be sure, one could argue that *Wasau* is distinguishable because, from State Farm's perspective, if State Farm may aggregate claims, then the $100,000 cap will be exceeded and the supposedly one Company Claim would not be subject to mandatory arbitration. But that is no distinction. What Pentair has sought by moving to compel arbitration is to require State Farm to arbitrate each of the individual subrogation claims against Pentair. It is all well and good that State Farm wants to litigate all the claims in one federal court proceeding, but there is no doubt that each individual claim is subject to mandatory arbitration, and that is what Pentair is demanding.

In addition to maintaining consistency with *Wasau*, it is worth noting that giving the arbitrator the authority to decide whether multiple claims may be aggregated is consistent with the general principles the Supreme Court use to define the "question of arbitrability" category. There is no "risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate," *Howsam*, 537 U.S. at 83-84, because, as discussed above, the type of dispute is indisputably covered by the

7

Arbitration Agreement. Nor is there anything unexpected about having agreed to permit an arbitrator to decide the meaning of Arbitration Forums's own standard agreement. This is particularly true where the answer to the question will make the difference between Arbitration Forums providing an arbitration service for 108 claims in one proceeding (and for one filing fee) instead of 108 separate proceedings.

Pentair also seeks dismissal of the complaint in conjunction with its motion to compel arbitration. But in a suit "upon any issue referable to arbitration under an agreement in writing for such an arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . ." 9 U.S.C. § 3. Accordingly, the Court will stay the case and set periodic status hearings.

## III.

For the reasons stated above, the motion to compel arbitration [R. 15] is granted. The status hearing of September 18 is reset to November 7, 2012 at 8:30 a.m. On or before November 5, 2012, the parties shall file a joint written status report describing the status of the arbitration proceedings.

ENTERED:

*Edmond E. Chang*
_____
Honorable Edmond E. Chang
United States District Judge

DATE: September 7, 2012